IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:23CV216 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff John S. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on May 5, 2020, alleging a disability onset date of September 21, 2019. (Tr. at 10, 171-77.)[2] Plaintiff's application was denied initially (Tr. at 53-71, 84-88) and upon reconsideration (Tr. at 72-83, 90-93). Thereafter,

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 99-100.) On August 22, 2022, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 10, 31-52.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 20-21), and on January 9, 2023, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date of September 21, 2019. (Tr. at 12.) The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease; chronic lower back pain; migraine headaches; carpal tunnel syndrome; obesity; and left common iliac artery aneurysm[.]

(Tr. at 12.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 14-15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, during the time period at issue, he could perform a range of light work with the following, non-exertional limitations:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent climbing of ramps and stairs, but occasional climbing of step ladders up to 4' in vertical height but none that are higher, and no climbing or ropes or scaffolds. He can frequently knee[l] and crouch. He can occasionally crawl and stoop. [Plaintiff] can frequently but not constantly handle and finger with the bilateral upper extremities due to a history of carpal tunnel syndrome. Avoid concentrated exposure to extreme heat and workplace hazards as defined in the Selected Characteristics of Occupations. Avoid concentrated exposure [to] noise levels greater than moderate as defined in the SCO, due to history of migraine headaches.

(Tr. at 15.) At step four of the analysis, the ALJ found, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform his past relevant work. (Tr. at 19.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 19-20.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 20-21.)

Plaintiff now challenges the ALJ's RFC assessment in two respects. First, he contends that "the ALJ erred by failing to evaluate the medical opinions of Nurse Practitioner ("NP") Irene Strickland." (Pl.'s Br. [Doc. #10] at 1.) Second, Plaintiff argues that the ALJ "erred by failing to perform a function-by-function evaluation of Plaintiff's contested and relevant abilities to stand, walk, and sit when assessing the [RFC]." (Pl.'s Br. at 1.)

A. Opinion evidence

Plaintiff first argues that the ALJ failed to address the medical opinions of NP Strickland in the administrative decision. As recounted in Plaintiff's Brief, Strickland examined Plaintiff on March 7, 2018 and July 13, 2018 as part of Plaintiff's compensation and pension process for the Department of Veterans Affairs ("VA"). (Pl.'s Br. at 4-6.) Based on her examinations, Strickland opined that Plaintiff required rest breaks when experiencing severe

6

Case 1:23-cv-00216-JEP   Document 15   Filed 09/30/24   Page 6 of 13

headaches. (Pl.'s Br. at 4) (citing Tr. at 652). She also opined that Plaintiff's lumbar spine condition precluded "heavy lifting, twisting, bending, climbing, prolonged sitting without rest breaks, working overhead, operation of heavy manual equipment, pushing, pulling, or gripping." (Pl.'s Br. at 5) (citing Tr. at 674).

As Plaintiff further notes, "[o]n April 15, 2020, the VA issued a decision increasing [Plaintiff's] previously assigned ratings for disability." (Pl.'s Br. at 6) (citing Tr. at 165). The VA found Plaintiff entitled to "individual unemployability" based on his "service-connected insomnia disorder, alcohol use disorder, depressive disorder (previously rated as insomnia) and degenerative arthritis of the spine with spinal stenosis and intervertebral disc syndrome." (Tr. at 166-167.) The decision specifically noted that Plaintiff's back impairment rendered him "unable to sit for periods longer than 5-10 minutes." (Tr. at 167.)

The ALJ in the present case did not discuss Plaintiff's VA rating or mention the opinions of NP Strickland. Plaintiff acknowledges that, under the current regulations, ALJs are no longer required to evaluate disability decisions from other agencies. See Rogers v. Kijakazi, 62 F.4th 872, 878-79 (4th Cir. 2023). However, Plaintiff stresses that, under 20 C.F.R. § 404.1504, ALJs are still required to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [they] receive as evidence [for a] claim in accordance with § 404.1513(a)(1) through (4)." (Pl.'s Br. at 7.) Plaintiff further argues that, "beyond its constituting evidence underlying the VA disability determination, NP Strickland's medical opinions must be evaluated in their own right." (Pl.'s Br. at 7) (citing 20 C.F.R. § 404.1520c(b)) ("We will articulate in our determination or decision

how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").

The Court agrees that the ALJ's failure to consider NP Strickland's medical opinions requires remand. With respect to the evaluation of opinion evidence, under the applicable regulations for claims filed on or after March 27, 2017,

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .
>
> (1) <u>Supportability.</u> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) <u>Consistency.</u> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) <u>Relationship with the claimant</u> . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . [and] (v) Examining relationship. . . .
>
> (4) <u>Specialization</u>. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) <u>Other factors</u>. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a) and (c). The regulations also require decision-makers to "articulate in . . . [their] decisions how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), 404.1520c(c)(1)-(c)(2). Therefore, paragraph (b) further provides that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination of decision." 20 C.F.R. § 404.1520c(b)(2). Express discussion of the remaining factors is not required. See 20 C.F.R. § 404.1520c(b)(2); see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (Jan. 18, 2017) (explaining that the final rules in § 404.1520c "require our [ALJs] to consider all of the factors" in § 404.1520c(c) "for all medical opinions and, at a minimum, to articulate how they considered the supportability and consistency factors" in determining persuasiveness). In other words, §§ 404.1520c(b)–(c) define the "minimum level of articulation" an ALJ must include in her written decision "to provide sufficient rationale for a reviewing . . . court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01; see also Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018).

Accordingly, the question in the present case is whether the ALJ adequately addressed whether the medical opinion at issue was supported by the source's own records and consistent with the other evidence in the record. See 20 C.F.R. § 404.1520c(b)(2);

404.1520c(c)(1)-(2). "[T]he relevant regulations do not require 'particular language' or adherence to any 'particular format' in a decision, so long as the ALJ reasonably articulates her decision so that a reviewing court can 'trace the path of the adjudicator's reasoning.'" Boyd v. Kijakazi, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022) (internal citations omitted). Nevertheless, "whatever format the ALJ *does* choose must allow a reviewing court to discern an 'accurate and logical bridge' from the record evidence to the ALJ's conclusion." Id. at *3 (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal citation omitted)). In particular, the ALJ must connect her discussion of the record evidence with her findings as to whether a specific source's opinions were consistent with and supported by that evidence. If this connection is not set out in a manner which allows the Court to "'trace the path' of the ALJ's reasoning," Boyd, 2022 WL 949904, at *3, the Court may not "fill in the blanks" in the ALJ's analysis, Allison E. B. v. Kijakazi, No. 2:21-CV-29, 2022 WL 955013, at *8 (E.D. Va. Jan. 31, 2022).

In the present case, the ALJ did not address NP Strickland's opinions at all, and the examination records in question clearly contain evidence contradicting the ALJ's findings and included nowhere else in her analysis. For example, on March 7, 2018, NP Strickland found, upon exam, that Plaintiff displayed reduced sensation in his left knee, reduced reflexes in both lower extremities, and a mildly stiff gait due to his lumbar spine condition. (Tr. at 670-71.) Strickland opined that, as a result of his condition, Plaintiff could only perform work which precluded heavy lifting, twisting, bending, climbing, prolonged sitting without rest breaks, working overhead, operating heavy equipment, pushing, pulling, or gripping. (Tr. at 674.) NP Strickland also opined that with respect to Plaintiff's headaches, Plaintiff could "function in

occupational capacity that allows him to take rest breaks during severe headaches." (Tr. at 652.) On a subsequent examination of Plaintiff's lumbar condition on July 13, 2018, Strickland found that Plaintiff's sensory issues had worsened. In particular, she found that Plaintiff had decreased sensation in his left arm, hand, and fingers, bilateral anterior thighs, bilateral ankles, right lower leg, and left foot and toes. (Tr. at 608-09.) Strickland further noted trophic changes in the skin of Plaintiff's legs and found that his gait was abnormal and stiff as a result of his back and neck pain. (Tr. at 609.) Plaintiff also exhibited pain with weightbearing and a limited range of motion due to pain and muscle spasming in his thoracolumnar spine. (Tr. at 620-21.) Accordingly, NP Strickland opined that Plaintiff could "perform physical labor that precludes heavy lifting, climbing, bending, twisting, or walking and standing for prolonged periods of time." (Tr. at 627-28.) Strickland also found that Plaintiff required the occasional use of a walking stick for support. (Tr. at 624-25.)

The VA ultimately issued a decision on April 15, 2020 increasing Plaintiff's previously assigned disability ratings and specifically noting that, "due to . . . degenerative arthritis of the spine with spinal stenosis and intervertebral disc syndrome[, Plaintiff is] unable to sit for periods longer than 5-10 minutes." (Tr. at 167.) Although the ALJ was not required to evaluate the VA decision itself under the current regulations, the underlying medical evidence, including NP Strickland's treatment records and medical opinion evidence, remains relevant under 20 C.F.R. § 404.1504 and must be considered. See also 20 C.F.R. § 404.1513(a)(1)-(4). In his Brief, Defendant argues that the ALJ adequately considered the medical opinion evidence because she cited to Exhibit 6F. However, Exhibit 6F is over 400 pages covering the time period from October 3, 2016 to June 2, 2020, so a general cite to Exhibit 6F, without

any mention of the opinion evidence included there, is not sufficient to explain the treatment of that evidence or allow the Court to follow the ALJ's reasoning.[5] Because the ALJ failed to consider this evidence or explain her reasoning, and because the Court cannot find here that the failure to consider the evidence is harmless, remand is required so that the ALJ may consider this evidence in the first instance.[6]

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that First

---

[5] The Court notes that Strickland performed her examinations of Plaintiff in March and July of 2018, prior to his alleged onset date, during a brief period in which Plaintiff continued working in a job that he described as involving no lifting or carrying, no standing, and only 1 hour of walking per day (Tr. at 226.) Notably, neither the ALJ nor the Defendant raised the timing of Strickland's opinions as a basis for discounting them. The ALJ simply omitted any discussion of this opinion evidence without explanation. Because the ALJ did not offer any explanation or analysis, there is no way to determine if that was the basis for the ALJ's determination, or if the ALJ even noticed or considered NP Strickland's opinions. Attempting to consider any post-hoc rationale would be improper, as it is the agency's function to analyze and weight the evidence in the first instance. Moreover, as explained in another case from this District, "remoteness as a basis for excusing an ALJ's failure to mention medical evidence must be considered carefully." Pierce v. Berryhill, No. 1:17CV579, 2018 WL 3549842, at *1 n.1 (M.D.N.C. June 12, 2018); Pilcher v. Colvin, No. 5:14-cv-191–RJC, 2016 WL 1048071, at *4 (W.D.N.C. Mar. 16, 2016) ("It does not appear the Fourth Circuit has directly addressed an ALJ's consideration of medical evidence in the record which predates the claimant's alleged onset of disability. SSA regulations, however, state that all evidence in the case record will be considered. See 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Further, although it is not binding on this Court, other circuits have developed precedent that ALJs are required to examine the entire record including medical evidence prior to the alleged onset date."). Finally, as noted by this District in Pierce, 2018 WL 3549842, at *1 n.1, a failure to discuss certain evidence may constitute harmless error where "nothing about the tendered . . . records suggest[ed] Plaintiff was harmed by the failure of the ALJ to consider the records." However, NP Strickland's examinations and opinions directly addressed the impairments at issue and provided limitations supporting Plaintiff's allegations, and failure to consider the opinions or explain the reason for rejecting those limitations cannot be considered harmless.

[6] In light of this finding, the Court notes that Plaintiff's second, related challenge to the RFC also merits remand. As set out above, Plaintiff contends that the ALJ erred by failing to perform a function-by-function evaluation of evidence relating to Plaintiff's abilities to stand, walk, and sit. NP Strickland's medical opinions address all of these abilities. Therefore, the ALJ's omission of Strickland's evidence without explanation and without performing an analysis of that evidence in the context of Plaintiff's ability to sit, stand, and walk requires remand. On remand, the ALJ can consider all of Plaintiff's contentions, including with respect to the need for a further function by function analysis.

Defendant's Dispositive Brief [Doc. #13] is DENIED, and Plaintiff's Dispositive Brief [Doc. 10] is GRANTED to the extent set forth herein.

This, the 30th day of September, 2024.

                                              /s/ Joi Elizabeth Peake
                                              Joi Elizabeth Peake
                                              United States Magistrate Judge

13

Case 1:23-cv-00216-JEP   Document 15   Filed 09/30/24   Page 13 of 13